# UNITED STATES DISTRICT COURT

## FOR THE

## SOUTHERN DISTRICT OF NEW YORK

```
--------------------------------x
Louis Diaz, Gregory Korniloff, and :
Jack Toal, on their own behalf and :
as representatives of the Class,   :
                                   :   Civil Action No. 08-cv-00401(CM)
              Plaintiffs,          :
                                   :
              v.                   :
                                   :
NBC Universal, Inc.,               :
                                   :
              Defendant.           :
--------------------------------x
```

## MEMORANDUM OF LAW

(Application for Order To Show Cause)

DOMINIC F. AMOROSA
521 Fifth Avenue, Suite 3300
New York, NY 10175-3399
lawoffices@dfamorosa.com
Tel.: 212-406-7000


CAREY & ASSOCIATES LLC
521 Fifth Avenue, Suite 3300
New York, NY 10175-3399
mqc@CareyLitigation.com
Tel.: 212-758-0076

Attorneys for Plaintiffs

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................... II

  A.   CASES ............................................................ II

  B.   STATUTES ...................................................... III

PRELIMINARY STATEMENT ............................................... 1

STATEMENT OF FACTS .................................................. 1

ARGUMENT ............................................................ 8

THE COURT SHOULD GRANT PLAINTIFFS' APPLICATION FOR AN ORDER TO
SHOW CAUSE .......................................................... 8

  A.   PLAINTIFFS HAVE DEMONSTRATED THE LIKELIHOOD OF SUCCESS ON
       THE MERITS OF THEIR LIBEL CLAIM ............................ 9

     1)   PLAINTIFFS HAVE ESTABLISHED THE LIKELIHOOD OF SUCCESS
          IN PROVING EACH ELEMENT OF LIBEL PER SE ................. 10

     2)   PLAINTIFFS HAVE SHOWN THE LIKELIHOOD THAT NBC
          UNIVERSAL ACTED WITH MALICE ............................ 11

     3)   NBC UNIVERSAL PUBLISHED A LIBEL PER SE ................. 12

     4)   NBC UNIVERSAL IS NOT PROTECTED BY A PRIVILEGE ........... 13

  B.   PLAINTIFFS HAVE DEMONSTRATED IRREPARABLE HARM ............... 15

  C.   PLAINTIFFS HAVE DEMONSTRATED FAIR GROUNDS FOR LITIGATION
       AND A BALANCE OF HARDSHIPS IN THEIR FAVOR .................. 17

CONCLUSION ......................................................... 19

# TABLE OF AUTHORITIES

**A.    CASES**

ABDUL WALI V. COUGHLIN, 754 F.2D 1015 ( 2D CIR 1985), REV'D ON
    OTHER GROUNDS, FROMER V. SCULLY, 874 F.2D 69 (2ND CIR.
    1989) ...................................................... 9

ALBERT V. LOKSEN, 239 F.3D 256 (2D CIR. 2001) ................... 10

BUCKINGHAM CORP. V. KARP, 762 F.2D 257 (2D CIR 1985) ............. 15

CAMP SUMMIT OF SUMMITVILLE, INC. V. VISINSKI, 2007 WL 1152894
    AT *11 (S.D.N.Y., APR 16, 2007) ........................... 12

CHRISTIE-SPENCER CORP. V. HAUSMAN REALTY CO., INC., 118
    F.SUPP.2D 408 (S.D.N.Y. 2000) ...................... 7-9,14,15

CHURCHILL COMMUNICATIONS CORP. V. DEMYANOVICH, 668 F.SUPP. 207
    (SDNY 1987) ............................................... 16

COVINNO V. PATRISSI, 967 F.2D 73 (2D CIR. 1992) .................. 16

GERTZ V. WELCH, 418 U.S. 323, 94 S.CT. 2997, 41 L.ED.2D 789
    (1974) .................................................... 8

IDEMA V. WAGER, 120 F.SUPP.2D 361, 29 MEDIA L. REP. 2321
    (S.D.N.Y., NOV 02, 2000), AFF'D IDEMA V. WAGER, 29
    FED.APPX. 676, 30 MEDIA L. REP. 1439 (2ND CIR.(N.Y.) FEB
    15, 2002) (NOT SELECTED FOR PUBLICATION IN THE FEDERAL
    REPORTER, NO. 00-9540) ................................ 8,12,13

JACK KAHN MUSIC CO., INC. V. BALDWIN PIANO & ORGAN CO., 604
    F.2D 755 (2D CIR 1979) .................................... 16

JACKSON DAIRY, INC. V. H.P. HOOD & SONS, INC., 596 F.2D 70 (2D
    CIR 1979)(PER CURIAM) ..................................... 8

JOLLY V. COUGHLIN, 76 F.3D 468 (2D CIR.1996) .................... 9

LEXINGTON MANAGEMENT CORP. V LEXINGTON CAPITAL PARTNERS, 10
    F.SUPP.2D 271 (S.D.N.Y. 1998) ............................ 14

LIBERMAN V. GELSTEIN, 80 N.Y.2D 429, 590 N.Y.S.2D 857, 605
    N.E.2D 344 (1992) ......................................... 11

NATIONAL KITCHEN PRODUCTS, INC. V KELMORT TRADING & CO., 1992
    WL 18805 (S.D.N.Y. 1992) .................................. 15

REUTERS LTD. V. UNITED PRESS INTERN.. INC., 903 F.2D 904 (2D
    CIR. 1990) ................................................ 15

ROSO-LINO BEVERAGE DISTRIBUTORS, INC. V. COCA-COLA BOTTLING CO.
    OF NEW YORK, INC., 749 F.2D 124 (2D CIR. 1984) ............. 16

RUTA V. DELTA AIRLINES, INC., 322 F.SUPP.2D 391 (S.D.N.Y. 2004) 10,11

SMITHKLINE BEECHAM CONSUMER HEALTHCARE, L.P. V. WATSON
    PHARMACEUTICALS, INC., 211 F.3D 21 (2D CIR. 2000), CERT.
    DENIED, 121 S.CT. 173, 531 U.S. 872, (U.S. 2000) ............. 8

TOM DOHERTY ASSOCIATES V. SABAN ENTERTAINMENT, 60 F3D. 27, 34
    (2D CIR 1995) ........................................... 14

**B.    STATUTES**

RULE 65, FEDERAL RULES OF CIVIL PROCEDURE ........................ 1

N.Y.CIV.RIGHTS LAW § 74 (MCKINNEY 1963) ......................... 12

## PRELIMINARY STATEMENT

Plaintiffs on their own behalf and as representatives of the plaintiff class (collectively "**Plaintiffs**") respectfully submit this memorandum in support of Plaintiffs' application, pursuant to Rule 65, Federal Rules of Civil Procedure, for an order directing the defendant NBC Universal, Inc. ("**NBC Universal**") to show cause why a temporary restraining order ("**TRO**") should not be issued prohibiting the further distribution of the film, American Gangster, with a legend that libels the Plaintiff Class, pending a hearing on a preliminary injunction. [1]

This is not an application for a stay pending the return date of the TRO. Plaintiffs' application is to place NBC Universal on notice with respect to the application for a TRO.

## STATEMENT OF FACTS

**Frank and Richie's collaboration led to the convictions of three quarters of New York City's Drug Enforcement Agency.**
American Gangster, 2007, printed legend.

On November 2, 2007, defendant NBC Universal, through its

---

[1]     Citations preceded by "**DFA Aff**" refer to the affirmation of Dominic F. Amorosa, executed January 22, 2008.
        Citations preceded by "**Korniloff Aff**" refer to the Affidavit of Gregory Korniloff, sworn to on January 14, 2008.
        Citations preceded by "**Scalzo Aff**" refer to the Affidavit of Arthur W. Scalzo, sworn to on January _____, 2008.
        Citations preceded by "**Toal Aff**" refer to the Affidavit of Jack Toal, sworn to on January 14, 2008.

Universal Studios, released American Gangster to the public. (Toal Aff ¶ 13). The film stated falsely, in writing, to the millions of people who have seen it, that three quarters of the New York City Branch of the United States Drug Enforcement Administration, which is also known as New York City's Drug Enforcement Agency ("**DEA**"), were convicted criminals. (Scalzo Aff ¶ 4). This false and defamatory statement has already impugned the reputations of hundreds of honest and courageous public servants in the eyes of millions of people who have already been exposed to this defamation, and, if a TRO and preliminary injunction are not issued, will further ruin and impugn their reputations in the eyes of millions more who are about to be exposed to it.

American Gangster purports to represent the alleged narcotics' trafficking activities of Frank Lucas who, from the early 1970's until his arrest on January 28, 1975 by New York City's DEA, was a major narcotics' trafficker in the New York City area. (Korniloff Aff ¶ 6). As a result of his narcotics' trafficking, Lucas became a target of New York City's DEA and the United States Attorney's Office for the Southern District of New York ("**USAO**"). After an intensive investigation, New York City's DEA, assisted by officers of the New York City Police Department ("**NYPD**"), arrested Lucas on January 28, 1975 at his house in Teaneck, New Jersey. At the time of his arrest, Lucas'

house was lawfully searched pursuant to warrant and $585,000 in currency was seized which had been derived from the sale of narcotics. (Korniloff Aff ¶ 7).

Lucas was thereafter tried in September 1975 by the USAO, convicted and sentenced to 40 years' imprisonment. Subsequently, he cooperated with the USAO and with New York City's DEA and assisted in the apprehension and convictions of numerous other narcotics' traffickers. (Toal Aff ¶ 7). Lucas' cooperation, however, did not lead to the conviction of a single agent of New York City's DEA, or officer of the NYPD or any other law enforcement official in New York or elsewhere, ever. (Toal Aff ¶ 8; Scalzo Aff ¶ 5).

American Gangster, which asserts it is based on "a true story", represents the above events falsely.  It asserts that one Richard Roberts, a former law enforcement official in Newark, New Jersey, was the individual primarily responsible, together with others working in his squad, for investigating, apprehending and prosecuting Lucas.  American Gangster represents that it was with Roberts that Lucas cooperated after his arrest in the investigation of other criminality.  American Gangster represents the search of Lucas' house on January 28, 1975 by the New York City's DEA and NYPD officers, referred to above, in the most awful and corrupt manner, representing that Lucas' wife was assaulted, his dog shot in a vicious manner, and

– 3 –

hundreds of thousands of dollars stolen by corrupt law enforcement officials.

American Gangster also falsely represents that Lucas cooperated with Roberts in causing the convictions of the allegedly corrupt law enforcement officials who searched his house on January 28, 1975. American Gangster libels the Plaintiff Class by falsely representing that Lucas not only cooperated with Roberts in investigating corrupt law enforcement officers, but by falsely stating as fact in a legend that appears at the end of the film, that this **collaboration led to the convictions of three quarters of New York City's Drug Enforcement Agency."** (**"False Legend"**) The False Legend is defamatory and libelous *per se*. No such thing ever occurred. Not a single agent of the New York City's DEA, or employee, or any other law enforcement officer, was convicted of anything based upon the so-called "collaboration" of Lucas and Roberts. Nor was a single agent of New York City's DEA or NYPD officer convicted in any case or investigation involving Frank Lucas, whether based upon a collaboration of Lucas and Roberts or any other resource. (Toal Aff ¶ 8; Scalzo Aff ¶ 5).

Defendant's clever scheme, in essence a scheme to defraud the public at the expense of New York City's DEA, was in fact successful. The film has already grossed over $127,000,000. As a result of viewing American Gangster, millions of people now

believe an awful falsity: that the law enforcement officials, DEA agents and NYPD officers, who searched Lucas' house, in addition to their colleagues, were brutally corrupt and were convicted for this corruption as a result of the so called "collaboration" of Lucas and Roberts.  Hundreds of DEA Special Agents who risked their lives on a daily basis on the streets of New York City in the 1970's and 1980's have been deliberately defamed, libeled and slandered in the eyes of millions.

The best way to describe the harm already caused here is to quote from the affidavit of Arthur W. Scalzo, Jr. submitted in support of this application.  Mr. Scalzo is a former agent of the DEA and a class member.  He is now stationed in Iraq with our troops, having taken a one-year leave of absence from his current job as an investigator with the Suffolk County District Attorney. (Scalzo Aff ¶ 3).  He states as follows:

> The movie, American Gangster, has been seen in Iraq.  Approximately 20 US soldiers whom I serve with, who know I am a former DEA agent, have questioned me about the legend that appears at the end of the movie which states that Lucas and Richard Roberts' "collaboration led to the convictions of three quarters of New York City's Drug Enforcement Agency".  All of these soldiers understood the legend to refer to agents with whom I served in New York City in the 1970's.  In essence they have asked me how it came about that there could be so many corrupt agents working in DEA.  I have been deeply hurt and embarrassed by these

> questions even though I know the legend
> to be false, and that not a single DEA
> agent was ever arrested, let alone
> convicted, of anything to do with Frank
> Lucas.  I of course explained this to
> the soldiers.  However, I cannot
> explain it to the millions of others
> who have seen this lie and also
> believed it to be true.  I am certain
> that my reputation and the reputation
> of my colleagues have been damaged by
> this lie. I worked very hard in my life
> to establish a reputation for being an
> honest law enforcement officer, and it
> hurts to see this reputation damaged by
> this lie, along with the reputations of
> so many honest and courageous former
> agents who risked their lives to
> enforce the narcotics' laws in the
> 1970's and 1980's. (Scalzo Aff ¶4).

On November 23, 2007, counsel for plaintiff Gregory Korniloff wrote to Universal Studios demanding that the False Legend be removed from further distribution of American Gangster. (DFA Aff ¶18, Ex B at Ex 1). Defendant refused.  In its letter of December 7, 2007, David L. Burg, Senior Vice President of NBC Universal, wrote that "corrupt law enforcement officers portrayed in the film are specifically identified as members of the New York City Police Department, and the film refers to their subsequent prosecution by the federal government". (DFA Aff ¶19, Ex B at Ex 2). Defendant's defense appears to be that it did not libel DEA; it libeled the New York City Police Department.  However, Mr. Berg's assertion, like the False Legend itself, is untrue.  There was not a single member of the New York Police Department so prosecuted by the federal

government or any other government. (Toal Aff ¶ 8; Scalzo Aff ¶ 5).

Moreover, Mr. Burg's claim is not supported by the False Legend. The False Legend does not refer to the New York City Police Department; it refers to the New York City Drug Enforcement Agency. There is and was no agency of the NYPD known as New York City's Drug Enforcement Agency, the agency alleged in the legend to have had three quarters of its members convicted.  The only entity known as New York City's Drug Enforcement Agency is DEA.  Other than DEA, there has never been a New York City Drug Enforcement Agency, federal or state. Importantly, on September 20, 2007, utilizing the Google search engine, a search conducted for "New York City Drug Enforcement Agency" revealed thousands of search results. The first result shown is the address of the NYC Drug Enforcement Administration, the DEA. Almost all the other search results refer to DEA as well.

A TRO should issue, pending a hearing on a preliminary injunction, to prevent further irreparable harm to these current and former public servants by preventing millions of others from viewing the lie that three quarters of them are convicted felons.  This is the only manner to protect Plaintiffs as NBC Universal has refused to retract the libel.

**ARGUMENT**

**THE COURT SHOULD GRANT PLAINTIFFS'**
**APPLICATION FOR AN ORDER TO SHOW CAUSE**

Plaintiffs have met their burden for an order directing NBC Universal to show cause why it should not be temporarily restrained from further distribution of American Gangster, pending a hearing on a preliminary injunction. The award of a preliminary injunction is an extraordinary and drastic remedy that may be granted upon a clear showing that the plaintiff has met its burden of proof. Christie-Spencer Corp. v. Hausman Realty Co., Inc., 118 F.Supp.2d 408, 417 (S.D.N.Y. 2000)(citing, see Hanson Trust PLC v. SCM Corp., 774 F.2d 47, 60 (2d Cir.1985); Beech-Nut, Inc. v. Warner-Lambert Co., 480 F.2d 801, 803 (2d Cir.1973); Kraft General Foods, Inc. v. Allied Old English, Inc., 831 F.Supp. 123, 127 (S.D.N.Y.1993)).

The False Legend states as a fact that 3/4 of the plaintiff class are convicted criminals. That the publication of such a "fact" to millions of people irreparably damages a current or former law enforcement officer's reputation is obvious. This harm is exactly what the law of defamation is designed to protect against. See Gertz v. Welch, 418 U.S. 323, 343-45, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974); Idema v. Wager, 120 F.Supp.2d 361, 365, 29 Media L. Rep. 2321 (S.D.N.Y., Nov 02, 2000), aff'd, Idema v. Wager, 29 Fed.Appx. 676, 30 Media L. Rep. 1439 (2nd Cir.(N.Y.) Feb 15, 2002) (Not selected for publication in the

Federal Reporter, NO. 00-9540).

The burden is on Plaintiffs to show irreparable harm if a TRO and preliminary injunction are not granted, and either (1) a likelihood of success on the merits; or (2) that there are sufficiently serious questions going to the merits to make them a fair ground for litigation and that a balance of hardships tips decidedly toward Plaintiffs. <u>Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.</u>, 596 F.2d 70, 72 (2d Cir 1979)(<u>per curiam</u>), <u>see also, SmithKline Beecham Consumer Healthcare, L.P. v. Watson Pharmaceuticals, Inc.</u>, 211 F.3d 21, 24 (2d Cir. 2000), <u>cert. denied</u>, 531 U.S. 872, 121 S.Ct. 173 (2000); <u>Christie-Spencer Corp.</u>, 118 F.Supp.2d at 417-418 (citing, <u>see</u> <u>Forest City Daly Housing,Inc. v. Town of North Hempstead</u>, 175 F.3d 144, 149 (2d Cir.1999). <u>Accord Statharos v. New York City Taxi & Limousine Comm'n</u>, 198 F.3d 317, 321 (2d Cir.1999); <u>Genesee Brewing Co., Inc. v. Stroh Brewing Co.</u>, 124 F.3d 137, 142 (2d Cir.1997); <u>Tom Doherty Associates, Inc. v. Saban Entertainment, Inc.</u>, 60 F.3d 27, 33 (2d Cir.1995)).

A.  **PLAINTIFFS HAVE DEMONSTRATED THE LIKELIHOOD OF SUCCESS ON THE MERITS OF THEIR LIBEL CLAIM**

After establishing that an injunction is necessary to prevent irreparable harm, because otherwise NBC Universal will continue to show American Gangster with the False Legend, discussed below, Plaintiffs need only show that they have better than a fifty percent probability of prevailing at trial on their

- 9 -

libel claim. Considerable doubt will not defeat Plaintiffs'
application. <u>Abdul Wali v. Coughlin</u>, 754 F.2d 1015, 1025 (2d
Cir. 1985) (citations omitted), <u>rev'd on other grounds</u>, <u>Fromer
v. Scully</u>, 874 F.2d 69 (2nd Cir. 1989); <u>Christie-Spencer Corp.</u>,
118 F.Supp.2d at 418.

Plaintiffs are entitled to mandatory injunctive relief (See
DFA Aff ¶8) since they have shown a clear and substantial
likelihood of success on the merits. <u>See Jolly v. Coughlin</u>, 76
F.3d 468, 473 (2d Cir.1996); <u>Christie-Spencer Corp.</u>, 118
F.Supp.2d at 418.

NBC Universal disputes the False Legend refers to the DEA
but, given the language of the legend, and the fact that there
is no other agency in New York City known as the "New York City
Drug Enforcement Agency", other than DEA, there can be no
substantial, reasonable, dispute as to the material facts
detailed in the Statement of Facts. Plaintiffs have shown by
detailed affidavits a clear and substantial likelihood of
success on the merits.

**1)   Plaintiffs Have Established The Likelihood Of Success
In Proving Each Element Of Libel Per Se**

Under New York law, to state a <u>prima facie</u> case of slander,
a plaintiff must show:

(1)  A defamatory statement of fact;
(2)  That is false;
(3)  Published to a third party;

(4)  "[O]f and concerning" the plaintiff;

(5)  Made with the applicable level of fault on the part of the speaker;

(6)  Either causing special harm or constituting **slander** per se; and

(7)  Not protected by privilege.

<u>Albert v. Loksen</u>, 239 F.3d 256, 265-66 (2d Cir. 2001); <u>Ruta v. Delta Airlines, Inc.</u>, 322 F.Supp.2d 391, 403 (S.D.N.Y. 2004).

The False Legend and the affidavits in support of this application prove elements 1 through 4.

### 2)  Plaintiffs Have Shown The Likelihood That NBC Universal Acted With Malice

Assuming Plaintiffs are deemed "public figures", NBC Universal acted with the requisite malice. The False Legend is undeniably a statement about the New York City branch of the Drug Enforcement Administration, an Agency of the federal government. Plaintiffs' affidavits also prove that no agent of the DEA was ever convicted of any crime in relation to, or based on the testimony of, Frank Lucas. Since the defamatory accusations reference criminal conduct by Plaintiffs that never occurred, NBC Universal had no basis to publicize the False Legend. Indeed, had someone at NBC merely checked the claim by placing the words "New York City Drug Enforcement Agency" into a Google internet search, they would have immediately learned that the accusation was false.

Proof of malice is also apparent in what the False Legend does not say. There is no indication in the legend that it

-11-

refers to anyone in the New York City Police Department, underscoring that NBC Universal's attorney had no basis for his claim to the contrary.

Finally, NBC Universal's malice is apparent from its failure to retract the False Legend when it was advised by Plaintiffs' attorney that it was false, and to nevertheless continue to publicize the False Legend across the nation to millions of viewers, for revenues in excess of $100,000,000.

### 3)    NBC Universal Published A Libel Per Se

The written legend in American Gangster, asserting falsely that current and former DEA agents are convicted criminals, plainly injures them in their trade, business and profession. Such charges constitute libel _per se_. See Liberman v. Gelstein, 80 N.Y.2d 429, 435, 590 N.Y.S.2d 857, 860, 605 N.E.2d 344 (1992); cf. Ruta, 322 F.Supp.2d at 403 (leave granted to amend defamation claim).

NBC Universal's False Legend is actionable _per se_ since it tends to expose Plaintiffs to "public hatred, shame, obloquy, contempt, ridicule, aversion, ostracism, degradation, [and] disgrace" and "to induce an evil opinion of [Plaintiffs] in the minds of right-thinking persons and to deprive one of one's confidence and friendly intercourse in society" and tends to disparage each Plaintiff in the way of his office, profession or trade. Idema, 120 F.Supp.2d at 367, (citing, See Tracy v.

-12-

Newsday, Inc., 5 N.Y.2d 134, 136, 182 N.Y.S.2d 1, 155 N.E.2d 853
(NY 1959); see, e.g., Kimmerle v. New York Evening Journal,
Inc., 262 N.Y. 99, 186 N.E. 217, 218 (1933)).

With NBC Universal informing millions of citizens that a
small group of federal narcotics agents in New York City were
convicted criminals, and by unquestionable inference, convicted
in relation to the notorious narcotics distribution and related
crimes of Frank Lucas, it has induced the most negative opinions
of Plaintiffs in the minds of the public, the persons they took
an oath to serve.

Additionally, the False Legend has "a precise and readily
understood meaning" and "may be proven false," since Plaintiffs
either broke the law or they did not. Moreover, the public could
reasonably assume that NBC Universal was privy to criminal
conduct of Plaintiffs that supported the false claim. Camp
Summit of Summitville, Inc. v. Visinski, 2007 WL 1152894 at *11
(S.D.N.Y., Apr 16, 2007).

### 4)    NBC Universal Is Not Protected By A Privilege

A civil action cannot be maintained against any person,
firm, or corporation, for the publication of a fair and true
report of any judicial proceeding.  N.Y.Civ.Rights Law § 74
(McKinney 1963); Idema, 120 F.Supp.2d at 365-66. If NBC
Universal claims the False Legend was a report on convictions of
plaintiffs that were the result of judicial proceedings, the

Court should nevertheless issue a TRO and a preliminary injunction. The purpose of section 74 was to encourage dissemination of information regarding official proceedings to make the public more aware. Idema, 120 F.Supp.2d at 369 (citing, See Becher v. Troy Publ'g Co., Inc., 183 A.D.2d 230, 232, 589 N.Y.S.2d 644 (3rd Dept. 1992)). Here, NBC Universal was motivated by commercial gain, not to inform the public.

Assuming that NBC Universal has the right to rely on section 74 of New York's Civil Rights Law, whether NBC Universal's legend in American Gangster is "fair and true" is a determination that the Court must make. Idema, 120 F.Supp.2d at 366 (citing, See, e.g., Karp v. Hill and Knowlton, Inc., 631 F.Supp. 360, 363 (S.D.N.Y. 1986)).

Under Section 74, the Court is required to put the False Legend back in its allegedly libelous context, weighing the totality of circumstances. Idema, 120 F.Supp.2d at 366-67 (citing, See N.Y.Civ.Rights Law § 74 (McKinney 1963); Gurda, 81 A.D.2d at 131, 439 N.Y.S.2d 417 (Mollen, J., dissenting)). The effect of the False Legend on the ordinary reader must be examined together in the context of the false claim that the alleged convictions were the result of the collaboration of Lucas and Roberts and in the context of the subjects of that alleged collaboration, namely the unlawful narcotics importation and distribution by Lucas among other crimes depicted in

-14-

American Gangster. <u>See</u> <u>Idema</u>, 120 F.Supp.2d at 366-67 (citing,

<u>See, e.g., Steinhilber v. Alphonse</u>, 68 N.Y.2d 283, 294, 508

N.Y.S.2d 901, 501 N.E.2d 550, 552 (1986)).

**B.   PLAINTIFFS HAVE DEMONSTRATED IRREPARABLE HARM**

The Scalzo affidavit alone is dispositive on the issue of

irreparable harm. NBC Universal's continued showing of American

Gangster will continue to defame Plaintiffs and cause

prospective irreparable harm to their good reputations and

business relationships and prospects. A TRO, pending a hearing

on a preliminary injunction, should issue because Plaintiffs

have made "a clear showing that the moving party is entitled to

the relief requested, or [because] extreme or very serious

damage will result from denial of preliminary relief." <u>See</u> <u>Tom</u>

<u>Doherty Associates</u>, 60 F.3d at 34 (citations omitted); <u>Lexington</u>

<u>Management Corp. v. Lexington Capital Partners</u>, 10 F.Supp.2d

271, 276 (S.D.N.Y. 1998). The threat of injury to the Plaintiffs

is "actual and imminent," not remote or speculative, and not

easily compensated by monetary damages. <u>Christie-Spencer Corp.</u>,

118 F.Supp.2d at 418 (citing, <u>See Forest City Daly Housing,</u>

<u>Inc.</u>, 175 F.3d at 153 (quoting <u>Rodriguez v. DeBuono</u>, 162 F.3d

56, 61 (2d Cir.1998))).

This Court may also weigh the public interest on an

application for an injunction:

> "Although [the standard that Plaintiffs
> must meet] does not explicitly mention

-15-

> the public interest ... [the Second
> Circuit] ha[s] recognized that, as a
> court of equity, [it] 'may go much
> further both to give or to withhold
> relief in furtherance of the public
> interest than where only private
> interests are involved.'" Standard &
> Poor's Corp., Inc. v. Commodity Exch.,
> Inc., 683 F.2d 704, 711 (2d Cir.1982)
> (quoting Brown & Williamson Tobacco
> Corp. v. Engman, 527 F.2d 1115, 1121
> (2d Cir.1975), cert denied, 426 U.S.
> 911, 96 S.Ct. 2237, 48 L.Ed.2d 837
> (1976)); see also United States v.
> Marine Shale Processors, 81 F.3d 1329,
> 1359 (5th Cir.1996).

Christie-Spencer Corp., 118 F.Supp.2d at 418.

NBC Universal has intentionally damaged the reputation of Plaintiffs for honesty, trustworthiness, reliability, integrity, and ability to win the public trust. Harm to the public may also be considered in assessing whether a TRO should issue. The defamation in American Gangster undermines the trust that the public has a right to repose in the federal agents whose job it is to protect them from the illicit narcotics trade.

Merely a partial loss of Plaintiffs' business goodwill and the ability to compete for law enforcement and security positions establishes irreparable harm. Cf. National Kitchen Products, Inc. v Kelmort Trading & Co., 1992 WL 18805 *2-3 (SDNY 1992)(preliminary injunction granted). "[E]ven a speculative loss may cause immediate irreparable harm to ... good will." Reuters Ltd. v. United Press International, Inc., 903 F.2d 904, 908 (2d Cir. 1990)(cited in National Kitchen at *3).

-16-

A TRO and preliminary injunction are appropriate to prevent the future irreparable injury described in the statement of facts. See Buckingham Corp. v. Karp, 762 F.2d 257, 262 (2d Cir. 1985)(future injury to business reputation).

## C.    PLAINTIFFS HAVE DEMONSTRATED FAIR GROUNDS FOR LITIGATION AND A BALANCE OF HARDSHIPS IN THEIR FAVOR

Plaintiffs have established, in addition to irreparable harm, sufficiently serious questions of law and fact going to the merits of the case to make them fair grounds for litigation as well as hardships that tip decidedly in their favor. Covinno v. Patrissi, 967 F.2d 73, 77 (2d Cir. 1992).

Plaintiffs have shown the action presents serious questions of law and fact regarding defamation and libel per se. NBC Universal libeled approximately 400 present and former federal agents by falsely claiming that, as a result of the collaboration, 75% of them were convicted of crimes related to the narcotics trafficking of Frank Lucas. And by its libel, NBC Universal also caused Plaintiffs to suffer an unwarranted attack on their good reputation, thereby exposing them to the opprobrium of their communities and to suffer lost job opportunities.

Since Plaintiffs have shown above that established law in cases involving similar facts supports their positions, they have met this branch of the test. Cf. Jack Kahn Music Co., Inc. v. Baldwin Piano & Organ Co., 604 F.2d 755, 762 (2d Cir 1979);

cf. Churchill Communications Corp. v. Demyanovich, 668 F.Supp. 207, 211-212 (SDNY 1987).

The balance of hardships also favors Plaintiffs since the injury to Plaintiffs, if a TRO is denied, will be greater than that to NBC Universal if the TRO is granted. Roso-Lino Beverage Distributors, Inc. v. Coca-Cola Bottling Co. of New York, Inc., 749 F.2d 124, 126 (2d Cir. 1984)(per curiam). Plaintiffs will be harmed materially by the continued publication of the False Legend. NBC Universal may have to suffer lost sales from further distribution of American Gangster with the False Legend, or bear the expense to remove the False Legend that it used to earn over $100,000,000, but NBC Universal cannot claim that such burden is an unreasonable price to pay to avoid the greater injury Plaintiffs will continue to suffer if the TRO is denied.

**CONCLUSION**

The Court should grant the application for an order to show cause.

Dated:  New York, New York
        January 22, 2008

                              Respectfully submitted,


                              */s/ DOMINIC F. AMOROSA*
                              DOMINIC F. AMOROSA
                              521 Fifth Avenue, Suite 3300
                              New York, NY 10175-3399
                              lawoffices@dfamorosa.com
                              Tel.: 212-406-7000


                              CAREY & ASSOCIATES LLC


                              By: */s/ MICHAEL Q. CAREY*
                                  Michael Q. Carey
                              521 Fifth Avenue, Suite 3300
                              New York, NY 10175-3399
                              mqc@CareyLitigation.com
                              Tel.: 212-758-0076

                              Attorneys for Plaintiffs